ADAM J SCHWARTZ, ATTORNEY AT LAW
Adam J Schwartz (SBN 251831)]
E-service: adam@ajschwartzlaw.com
9465 Wilshire Blvd., Suite 300
Beverly Hills, CA 90212
Phone: (323) 455-4016

TURKE & STRAUSS LLP
Samuel J. Strauss (*pro hac vice* to be filed)
sam@turkestrauss.com
Raina Borrelli (*pro hac vice* to be filed)
raina@turkestrauss.com
613 Williamson St., #201
Madison, WI 53703
P: (608) 237-1775

MEYER WILSON CO., LPA
Matthew R. Wilson (SBN 290473)
mwilson@meyerwilson.com
Michael J. Boyle, Jr. (SBN 258560)
mboyle@meyerwilson.com
Jared W. Connors (*pro hac vice* to be filed)
jconnors@meyerwilson.com
305 W. Nationwide Blvd.
Columbus, OH 43215
Telephone:  (614) 224-6000
Facsimile:  (614) 224-6066

*Attorneys for Plaintiff and the Proposed Class*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK MEDOFF, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MINKA LIGHTING, LLC,<br><br>Defendant. | Case No. 2:22-cv-08885<br><br>**Class Action Complaint** |

## INTRODUCTION

1. This case arises from a data breach. *See* Notice of Data Breach (Exhibit 1). Defendant Minka Lighting, LLC is a sophisticated lighting producer that operates on an international scale. Minka collects substantial amounts of personally identifying information (PII) regarding its employees, who have no choice but to trust Minka to keep their PII secure.

2. In a story that has become all too familiar, an unauthorized third-party obtained access

1

to Minka's computer systems and stole PII belonging to Minka employees. Criminals have posted the victims' data "on a web-based forum used by malicious actors." Exhibit 1. None of this would have occurred if Minka had implemented reasonable data security measures.

3.    Plaintiff Mark Medoff is a victim of the data breach. He brings this action for damages and equitable relief on behalf of himself and all others similarly situated.

## PARTIES

4.    Plaintiff Mark Medoff is a resident of Westchester County, New York. He was employed by Minka from 1997–1998.

5.    Defendant Minka Lighting, LLC is a California limited liability company with its principal place of business located at 1151 Bradford Circle, Corona, CA 92882.

## JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d) because at least one member of the proposed Class (including the named plaintiff) is a citizen of a state different from that of Defendant; the amount in controversy exceeds $5,000,000, exclusive of interest and costs; the proposed Class consists of more than 100 class members, and none of the exceptions under the subsection apply to this action.

7.    This Court has personal jurisdiction over Defendant because Minka is registered to do business in California; its headquartered is located in California; and this action arises out of decisions that Minka made from its California headquarters.

8.    Venue is proper because Minka's principal place of business is located in Riverside County.

## FACTUAL ALLEGATIONS

**A.    Minka allowed criminals to steal class members' PII and post it on the dark web.**

9.    Minka is a highly sophisticated lighting producer that "operat[es] on two continents." *Abou Us*, Minka Group (accessed Nov. 22, 2022), https://www.minkagroup.net/about-our-site.html.

10.    Minka collects substantial amounts of PII about its employees, including their social security numbers, which it stores and maintains on its computer systems.

11.    Minka's Notice of Data Breach does not reveal the full scope of the information that

was affected by the breach. On information and belief, the breach also exposed employees' names, addresses, dates of birth, bank account numbers, payroll information, insurance information, personal phone numbers and email addresses, background check and employment screening information, records of performance reviews, and medical information. This is reasonable to infer, as employers frequently collect such information. Discovery will reveal the full scope of information that was taken.

12. Hackers have breached Minka's computer systems on at least two occasions.

13. The first breach occurred between December 16, 2021, and April 5, 2022. *See* Notice of Data Breach, Exhibit 1.

14. Minka "did not identify" any documents or information that were "accessed by or disclosed to unauthorized third parties" during the first breach. *Id.*

15. However, it took Minka at least six months to learn about the breach in the first place, which was unreasonable under the circumstances.

16. On information and belief, Minka's investigation was faulty, and criminals did in-fact access employees' PII during the first breach. This would not have occurred if Minka had exercised reasonable care.

17. The second breach occurred between June 27, 2022, and June 29, 2022.

18. Criminals posted Minka employees' PII "on a web-based forum used by malicious actors." *Id.*

19. Minka learned about the breach on June 29, 2022. However, it did not inform the victims until late October–early November—a delay of about four months.

20. The four month delay between when Minka learned of the data breach and when it notified the victims was unreasonable under the circumstances.

21. This unreasonable delay prevented the victims (including Medoff) from taking action more promptly to mitigate their risk of identity theft.

22. Minka warned class members that they should now "remain vigilant" and review their accounts for evidence of fraudulent activity. *Id.* It also offered one-year of identity monitoring services, a $1,000,000 identity theft insurance policy, and identity recovery services. *Id.* Thus, Minka itself acknowledges that: (1) victims of the data breach are at an imminent risk of harm; (2) that

imminent risk of harm will continue for at least one year; and (3) the risk of harm is substantial, in that victims of identity theft can incur at least $1 million in damages.

**B.    The data breach was highly foreseeable, yet Minka failed to take reasonable precautions.**

23.    Given the type of data that Minka collected and stored, it was highly foreseeable that bad actors would attempt to access it without permission.

24.    "[H]ackers are likely to be drawn to databases containing information which has a high value on secondary black markets," such as "identifying and financial data." Mark Verstraete & Tal Zarsky, *Optimizing Breach Notification*, 2021 U. ILL. L. REV. 803, 854–55 (2021). Consequently, "relevant and rational firms should engage in greater security investment and reduced collection—all steps to limit the prospects of a potential breach and subsequent notification." Id. at 855.

25.    Social Security numbers are particularly attractive targets for hackers because they can easily be used to perpetrate identity theft and other highly profitable types of fraud. Moreover, Social Security numbers are difficult to replace, as victims are unable to obtain a new number until the damage is done.

26.    Because Minka collected and stored identifying and financial information that is very valuable to criminals, it was highly foreseeable that a bad actor would attempt to access that data without permission.

27.    Minka frequently collects and stores personally identifying and financial information. Therefore, the burden (if any) of implementing reasonable data security practices is minimal in comparison to the substantial and highly foreseeable risk of harm.

28.    On information and belief, Minka failed to adequately train its employees on even the most basic cybersecurity protocols, including:

 a.    Effective password management and encryption protocols, including, but not limited to, the use of multi-factor authentication for all users;

 b.    Locking, encrypting and limiting access to computers and files containing sensitive information;

 c.    Implementing guidelines for maintaining and communicating sensitive data;

d. Protecting sensitive patient information, including personal and financial information, by implementing protocols on how to request and respond to requests for the transfer of such information and how to securely send such information through a secure file transfer system to only known recipients; and

e. Providing focused cybersecurity awareness training programs for employees.

29. The FTC has noted the need to factor data security into all business decision-making. *See Start With Security, A Guide for Business*, FTC (accessed June 9, 2022), https://bit.ly/3mHCGYz. According to the FTC, data security requires: (1) encrypting information stored on computer networks; (2) retaining payment card information only as long as necessary; (3) properly disposing of personal information that is no longer needed; (4) limiting administrative access to business systems; (5) using industry-tested and accepted methods for securing data; (6) monitoring activity on networks to uncover unapproved activity; (7) verifying that privacy and security features function properly; (8) testing for common vulnerabilities; and (9) updating and patching third-party software. Id.

30. To that end, the FTC has issued orders against businesses that failed to employ reasonable measures to secure sensitive payment card data. *See In the matter of Lookout Services, Inc.*, No. C-4326, ¶ 7 (June 15, 2011) ("[Defendant] allowed users to bypass authentication procedures" and "failed to employ sufficient measures to detect and prevent unauthorized access to computer networks, such as employing an intrusion detection system and monitoring system logs."); *In the matter of DSW, Inc.*, No. C-4157, ¶ 7 (Mar. 7, 2006) ("[Defendant] failed to employ sufficient measures to detect unauthorized access."); *In the matter of The TJX Cos., Inc.*, No. C-4227 (Jul. 29, 2008) ("[R]espondent stored . . . personal information obtained to verify checks and process unreceipted returns in clear text on its in-store and corporate networks[,]" "did not require network administrators . . . to use different passwords to access different programs, computers, and networks[,]" and "failed to employ sufficient measures to detect and prevent unauthorized access to computer networks . . ."); *In the matter of Dave & Buster's Inc.*, No. C-4291 (May 20, 2010) ("[Defendant] failed to monitor and filter outbound traffic from its networks to identify and block export of sensitive personal information without authorization" and "failed to use readily available security measures to limit access between instore networks . . ."). These orders, which all preceded the data breach, further clarify the measures businesses must take to meet their data security obligations.

31.     On information and belief, Defendant's use of outdated and insecure computer systems and software that are easy to hack, and their failure to maintain adequate security measures and an up-to-date technology security strategy, demonstrates a willful and conscious disregard for privacy, and has exposed the PII of Plaintiff and thousands of members of the proposed Class to unscrupulous operators, con artists, and outright criminals.

32.     Defendant violated its obligation to implement best practices and comply with industry standards concerning computer system security, which allowed class members' data to be accessed and stolen by criminals.

### C.     Medoff's information was exposed in the data breach, which caused him to suffer concrete injuries.

33.     Plaintiff Mark Medoff was a Minka employee for about one year. He entrusted Minka with his personally identifying and financial information as a condition of his employment.

34.     Medoff received a data breach notification informing him that his personally identifying information was accessed in the breach, including his name and social security number. Medoff also confirmed with a Minka attorney that his social security number was compromised in the breach.

35.     Since Medoff was last employed by Minka in 1998, nearly 25 years ago, any record retention requirements potentially applicable to Medoff's PII had long since lapsed by the time of the breach. Minka's retention of Medoff's data was unreasonable under the circumstances.

36.     As a result of the data breach, Plaintiff suffered a loss of time, as he has spent and continues to spend a considerable amount of time on issues related to this Data Breach. In response to the data breach, Plaintiff has spent considerable time monitoring his accounts and credit score. This is time that was lost and unproductive and took away from other activities and duties.

37.     Plaintiff also suffered actual injury in the form of damages to, and diminution in, the value of his PII—a form of intangible property that he entrusted to Defendant—which was compromised in and as a result of the data breach.

38.     Plaintiff suffered lost time, annoyance, interference, and inconvenience as a result of the data breach and has anxiety and increased concerns for the loss of his privacy.

39. Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII, especially his Social Security number, being placed in the hands of criminals. This risk is particularly substantial in light of the fact that his data was posted on the dark web to a forum used by malicious actors.

40. Defendant continues to maintain Plaintiff's and class members' PII and have a continuing legal duty and obligation to protect that PII from unauthorized access and disclosure. Plaintiff would not have entrusted his PII to Defendant had he known that it would fail to maintain adequate data security. Plaintiff's PII was compromised and disclosed as a result of the Data Breach.

41. As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the data breach. As a result of the data breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

42. Because their personally identifying and financial information has been accessed by criminals, Plaintiff and the Class have suffered concrete and ongoing injuries.

43. Plaintiff and the Class are at an imminent and substantial risk of identity theft.

44. According to experts, one out of four data breach notification recipients become a victim of identity fraud. *Study Shows One in Four Who Receive Data Breach Letter Become Fraud Victims*, THREATPOST.COM (Feb. 21, 2013), https://bit.ly/3zB8Uwv.

45. Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PHI can be worth up to $1,000.00 depending on the type of information obtained. *See* Brian Stack, *Here's How Much Your Personal Information is Selling for on the Dark Web*, EXPERIAN (Dec. 15, 2017), https://bit.ly/2Ox2SGY.

46. The value of Plaintiff's and the proposed Class's PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals frequently post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

47. It can take victims years to spot identity or PII theft, giving criminals plenty of time to milk that information for cash.

48. One such example of criminals using PII for profit is the development of "Fullz" packages. "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money can be made off those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record or more on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz," which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge. *See, e.g.*, Brian Krebs, *Medical Records For Sale in Underground Stolen From Texas Life Insurance Firm*, KREBS ON SECURITY (Sep. 18, 2014), https://bit.ly/3Qj2eJd.

49. Cyber-criminals can cross-reference two sources of PII to marry unregulated or partial data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete "Fullz" dossiers on individuals.

50. The development of "Fullz" packages means that stolen PHI from the data breach can easily be used to link and identify it to Plaintiff's and the proposed Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PHI stolen by the cyber-criminals in the data breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is likely what is already happening to Plaintiff and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and other members of the proposed Class's stolen PII is being misused, and that such misuse is fairly traceable to the data breach.

51. According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses that year,

resulting in more than $3.5 billion in losses to individuals and business victims.

52. Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good."

53. Victims of identity theft also often suffer embarrassment, blackmail, or harassment in person or online, and/or experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

54. In addition to out-of-pocket expenses that can exceed thousands of dollars for the victim of new account identity theft, and the emotional toll identity theft can take, some victims have to spend a considerable time repairing the damage caused by theft of their PII. Victims of new account identity theft will likely have to spend time correcting fraudulent information in their credit reports and continuously monitor their reports for future inaccuracies, close existing bank/credit accounts, open new ones, and dispute charges with creditors.

55. Further complicating the issues faced by victims of identity theft, data thieves may wait years before attempting to use the stolen PII. To protect themselves, Plaintiff and the Class will need to be remain vigilant against unauthorized data use for years or even decades to come.

56. Moreover, the breach has diminished the value of Plaintiff and the Class's personal information.

57. The FTC has recognized that consumer data is a new and valuable form of currency. In a FTC roundtable presentation, former Commissioner Pamela Jones Harbour stated that "most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency." *Statement of FTC Commissioner Pamela Jones Harbour—Remarks Before FTC Exploring Privacy Roundtable*, FTC (Dec. 7, 2009), https://bit.ly/3xKfzmu.

58. Since it was included in the breach, Plaintiff and the Class's information has already been accessed by criminals, which decreases its value in the marketplace.

59. Therefore, the value of Plaintiff and the Class's personal information was reduced by the data breach.

60. Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting

commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

61.     Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII they obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

62.     None of those injuries would have occurred if Defendant had implemented reasonable data security practices.

## CLASS ACTION ALLEGATIONS

63.     Under Fed. R. Civ. P. 23, Plaintiff seeks certification of a class defined as follows

> All individuals whose PII was compromised in the Data Breaches that affected Minka Lighting, LLC from approximately December 16, 2021–April 5, 2022 and June 27, 2022–June 29, 2022.

Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

64.     Plaintiff reserves the right to amend the class definition.

65.     *Ascertainability.* Minka has identified, or is able to identify, all individuals affected by the data breach. These records will identify the Class Members.

66.     *Numerosity.* The data breach included PII regarding former Minka employees, like Plaintiff. Minka has employed hundred, if not thousands, of employees. Thus, individual joinder would be impracticable.

67.     *Commonality and Predominance.* This case presents questions of law and fact common to all class members, and those common questions predominate over individualized issues. These common questions include:

    a.     Whether Defendant had a duty to use reasonable care in safeguarding Plaintiff and the Class's PII;

b. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c. Whether Defendant was negligent in maintaining, protecting, and securing PII;

d. Whether Defendant breached contractual promises to safeguard Plaintiff and the Class's PII;

e. Whether Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

f. Whether Defendant's Breach Notice was reasonable;

g. Whether the Data Breach caused Plaintiff and the Class injuries;

h. What the proper damages measure is; and

i. Whether Plaintiff and the Class are entitled to damages, treble damages, or injunctive relief.

68. *Typicality.* Plaintiff's claims are typical of those of the Class, as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

69. *Adequacy.* Plaintiff will fairly and adequately protect the proposed Class's interests. His interests do not conflict with Class members' interests and he has retained counsel experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf, including as lead counsel.

70. *Manageability and Superiority.* Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individuals are insufficient to make individual lawsuits economically feasible.

## CAUSES OF ACTION

### Count 1: Negligence

### (On Behalf of Plaintiff and the Class)

71. Plaintiff realleges all previous paragraphs as if fully set forth below.

72. Plaintiff and members of the Class entrusted their PII to Defendant. Defendant owed to Plaintiff and other members of the Class a duty to exercise reasonable care in handling and using the

11

PII in its care and custody, including by implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that came to pass, and to promptly detect attempts at unauthorized access.

73. Defendant owed a duty of care to Plaintiff and members of the Class because it was foreseeable that Defendant's failure to adequately safeguard their PII in accordance with state-of-the-art industry standards concerning data security would result in the compromise of that PII—just like the Data Breach that ultimately came to pass. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and members of the Class's PII by disclosing and providing access to this information to third parties and by failing to properly supervise both the way the PII was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

74. Defendant owed to Plaintiff and members of the Class a duty to notify them within a reasonable timeframe of any breach to the security of their PII. Defendant also owed a duty to timely and accurately disclose to Plaintiff and members of the Class the scope, nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiff and members of the Class to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

75. Defendant owed these duties to Plaintiff and members of the Class because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security protocols. Defendant actively sought and obtained Plaintiff's and members of the Class's personal information and PII.

76. The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable. Given that Defendant holds vast amounts of PII, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the PII—whether by malware or otherwise.

77. PII is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiff and members of the Class and the

importance of exercising reasonable care in handling it.

78. Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and PII of Plaintiff and members of the Class which actually and proximately caused the Data Breach and Plaintiff's and members of the Class's injury.

79. Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and members of the Class, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff's and members of the Class's injuries-in-fact.

80. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and members of the Class have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

81. Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and members of the Class actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

**Count 2: Negligence Per Se**

**(On Behalf of Plaintiff and the Class)**

82. Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

83. Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and members of the Class's PII.

84. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect customers or, in this case, employees' PII.

The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff's and the members of the Class's sensitive PII.

85. Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect its employees' PII and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to its employees in the event of a breach, which ultimately came to pass.

86. The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

87. Defendant had a duty to Plaintiff and the members of the Class to implement and maintain reasonable security procedures and practices to safeguard Plaintiff and the Class's PII.

88. Defendant breached its respective duties to Plaintiff and members of the Class under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff and members of the Class's PII.

89. Defendant's violation of Section 5 of the FTC Act and its failure to comply with applicable laws and regulations constitutes negligence per se.

90. But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and members of the Class, Plaintiff and members of the Class would not have been injured.

91. The injury and harm suffered by Plaintiff and members of the Class were the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that Defendant was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their PII.

92. Had Plaintiff and members of the Class known that Defendant would not adequately protect their PII, Plaintiff and members of the Class would not have entrusted Defendant with their PII.

93.     As a direct and proximate result of Defendant's negligence per se, Plaintiff and members of the Class have suffered harm, including loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; lost control over the value of their PII; unreimbursed losses relating to fraudulent charges; losses relating to exceeding credit and debit card limits and balances; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen personal information, entitling them to damages in an amount to be proven at trial.

## Count 3: Breach of Contract

### (On Behalf of Plaintiff and the Class)

94.     Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

95.      Defendant offered to employ Plaintiff and members of the Class in exchange for their PII.

96.     In turn, and through internal policies, Defendant agreed it would not disclose the PII it collects to unauthorized persons. Defendant also promised to safeguard employee PII.

97.     Plaintiff and the members of the Class accepted Defendant's offer by providing PII to Defendant in exchange for employment with Defendant.

98.     Implicit in the parties' agreement was that Defendant would provide Plaintiff and members of the Class with prompt and adequate notice of all unauthorized access and/or theft of their PII.

99.     Plaintiff and the members of the Class would not have entrusted their PII to Defendant in the absence of such agreement with Defendant.

100.     Defendant materially breached the contract(s) it had entered with Plaintiff and members of the Class by failing to safeguard such information and failing to notify them promptly of the intrusion into its computer systems that compromised such information. Defendant further breached the implied contracts with Plaintiff and members of the Class by:

a.      Failing to properly safeguard and protect Plaintiff and members of the Class's PII;

b.  Failing to comply with industry standards as well as legal obligations that are necessarily incorporated into the parties' agreement; and

c.  Failing to ensure the confidentiality and integrity of electronic PII that Defendant created, received, maintained, and transmitted.

d.  The damages sustained by Plaintiff and members of the Class as described above were the direct and proximate result of Defendant's material breaches of its agreement(s).

101.  Plaintiff and members of the Class have performed as required under the relevant agreements, or such performance was waived by the conduct of Defendant.

102.  The covenant of good faith and fair dealing is an element of every contract. All such contracts impose upon each party a duty of good faith and fair dealing. The parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

103.  Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.

104.  Defendant failed to advise Plaintiff and members of the Class of the Data Breach promptly and sufficiently.

105.  In these and other ways, Defendant violated its duty of good faith and fair dealing.

106.  Plaintiff and members of the Class have sustained damages because of Defendant's breaches of its agreement, including breaches thereof through violations of the covenant of good faith and fair dealing.

### Count 4: Unjust Enrichment

### (On Behalf of Plaintiff and the Class)

107.  Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

108. This claim is pleaded in the alternative to Count 3.

109. Plaintiff and members of the Class conferred a benefit upon Defendant in the form of services through employment. Defendant also benefited from the receipt of Plaintiff's and members of the Class's PII, as this was used to facilitate their employment.

110. Defendant appreciated or had knowledge of the benefits conferred upon itself by Plaintiff and members of the Class.

111. Under principals of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff and the proposed Class's services and their PII because Defendant failed to adequately protect their PII. Plaintiff and the proposed Class would not have provided their PII or worked for Defendant at the payrates they did had they known Defendant would not adequately protect their PII.

112. Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and members of the Class all unlawful or inequitable proceeds received by it because of its misconduct and Data Breach.

### Count 5: Violation of the California Consumer Records Act

### Cal. Civ. Code § 1798.80, *et seq.*

### (On behalf of Plaintiff and the Class)

113. Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

114. Under California law, any "person or business that conducts business in California, and that owns or licenses computerized data that includes personal information" must "disclose any breach of the system following discovery or notification of the breach in the security of the data to any resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person." (Cal. Civ. Code § 1798.82.) The disclosure must "be made in the most expedient time possible and without unreasonable delay" (*Id.*), but "immediately following discovery [of the breach], if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person." (Cal. Civ. Code § 1798.82, subdiv. b.)

115. The Data Breach constitutes a "breach of the security system" of Defendant.

116.     An unauthorized person acquired the personal, unencrypted information of Plaintiff and the Class.

117.     Defendant knew that an unauthorized person had acquired the personal, unencrypted information of Plaintiff and the Class, but waited approximately four months to notify them. Four months was an unreasonable delay under the circumstances.

118.     Defendant's unreasonable delay prevented Plaintiff and the Class from taking appropriate measures from protecting themselves against harm.

119.     Because Plaintiff and the Class were unable to protect themselves, they suffered incrementally increased damages that they would not have suffered with timelier notice.

120.     Plaintiff and the Class are entitled to equitable relief and damages in an amount to be determined at trial.

### Count 6: Violation of California Unfair Competition Law

### Cal. Bus. Code § 17200, *et seq.*

### (On behalf of Plaintiff and the Class)

121.     Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

122.     Defendant engaged in unlawful and unfair business practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.* which prohibits unlawful, unfair, or fraudulent business acts or practices ("UCL").

123.     Defendant's conduct is unlawful because it violates the California Consumer Privacy Act of 2018, Civ. Code § 1798.100, *et seq.* (the "CCPA"), and other state data security laws.

124.     Defendant stored the PII of Plaintiff and the Class in its computer systems and knew or should have known it did not employ reasonable, industry standard, and appropriate security measures that complied with applicable regulations and that would have kept Plaintiff's and the Class's PII secure so as to prevent the loss or misuse of that PII.

125.     Defendant failed to disclose to Plaintiff and the Class that their PII was not secure. However, Plaintiff and the Class were entitled to assume, and did assume, that Defendant had secured their PII. At no time were Plaintiff and the Class on notice that their PII was not secure, which

Defendant had a duty to disclose.

126. Defendant also violated California Civil Code § 1798.150 by failing to implement and maintain reasonable security procedures and practices, resulting in an unauthorized access and exfiltration, theft, or disclosure of Plaintiff's and the Class's nonencrypted and nonredacted PII.

127. Had Defendant complied with these requirements, Plaintiff and the Class would not have suffered the damages related to the data breach.

128. Defendant's conduct was unlawful, in that it violated the CCPA.

129. Defendant's conduct was also unfair, in that it violated a clear legislative policy in favor of protecting consumers from data breaches.

130. Defendant's conduct is an unfair business practice under the UCL because it was immoral, unethical, oppressive, and unscrupulous and caused substantial harm. This conduct includes employing unreasonable and inadequate data security despite its business model of actively collecting PII.

131. Defendant also engaged in unfair business practices under the "tethering test." Its actions and omissions, as described above, violated fundamental public policies expressed by the California Legislature. *See, e.g*., Cal. Civ. Code § 1798.1 ("The Legislature declares that . . . all individuals have a right of privacy in information pertaining to them . . . The increasing use of computers . . . has greatly magnified the potential risk to individual privacy that can occur from the maintenance of personal information."); Cal. Civ. Code § 1798.81.5(a) ("It is the intent of the Legislature to ensure that personal information about California residents is protected."); Cal. Bus. & Prof. Code § 22578 ("It is the intent of the Legislature that this chapter [including the Online Privacy Protection Act] is a matter of statewide concern."). Defendant's acts and omissions thus amount to a violation of the law.

132. Instead, Defendant made the PII of Plaintiff and the Class accessible to scammers, identity thieves, and other malicious actors, subjecting Plaintiff and the Class to an impending risk of identity theft. Additionally, Defendant's conduct was unfair under the UCL because it violated the policies underlying the laws set out in the prior paragraph.

133. As a result of those unlawful and unfair business practices, Plaintiff and the Class

1    suffered an injury-in-fact and have lost money or property.

2         134.    The injuries to Plaintiff and the Class greatly outweigh any alleged countervailing

3    benefit to consumers or competition under all of the circumstances.

4         135.    There were reasonably available alternatives to further Defendant's legitimate business

5    interests, other than the misconduct alleged in this complaint.

6         136.    Therefore, Plaintiff and the Class are entitled to equitable relief, including restitution of

7    all monies paid to or received by Defendant; disgorgement of all profits accruing to Defendant

8    because of its unfair and improper business practices; a permanent injunction enjoining Defendant's

9    unlawful and unfair business activities; and any other equitable relief the Court deems proper.

10              **Count 7: Violation of the California Consumer Privacy Act**

11                          **Cal. Civ. Code § 1798.150**

12                  **(On behalf of Plaintiff and the Proposed Class)**

13        137.    Plaintiff and members of the Class incorporate the above allegations as if fully set forth

14   herein.

15        138.    Defendant violated California Civil Code § 1798.150 of the CCPA by failing to

16   implement and maintain reasonable security procedures and practices appropriate to the nature of the

17   information to protect the nonencrypted PII of Plaintiff and the Class. As a direct and proximate result,

18   Plaintiff's, and the Class's nonencrypted and nonredacted PII was subject to unauthorized access and

19   exfiltration, theft, or disclosure.

20        139.    Defendant is a business organized for the profit and financial benefit of its owners

21   according to California Civil Code § 1798.140, that collects the personal information of its customers

22   and employees, and whose annual gross revenues exceed the threshold established by California Civil

23   Code § 1798.140(d).

24        140.    Plaintiff and class members seek injunctive or other equitable relief to ensure

25   Defendant hereinafter adequately safeguards PII by implementing reasonable security procedures and

26   practices. Such relief is particularly important because Defendant continues to hold PII, including

27   Plaintiff's and Class members' PII. Plaintiff and Class members have an interest in ensuring that their

28   PII is reasonably protected, and Defendant has demonstrated a pattern of failing to adequately

safeguard this information.

141.  Pursuant to California Civil Code § 1798.150(b), Plaintiff mailed a CCPA notice letter to Defendant's registered service agents, detailing the specific provisions of the CCPA that Defendant has violated and continues to violate. If Defendant cannot cure within 30 days—and Plaintiff believes such cure is not possible under these facts and circumstances—then Plaintiff intends to promptly amend this Complaint to seek statutory damages as permitted by the CCPA.

142.  As described herein, an actual controversy has arisen and now exists as to whether Defendant implemented and maintained reasonable security procedures and practices appropriate to the nature of the information so as to protect the personal information under the CCPA.

143.  A judicial determination of this issue is necessary and appropriate at this time under the circumstances to prevent further data breaches by Defendant.

## PRAYER FOR RELIEF

144.  Plaintiff and members of the Class demand a jury trial on all claims so triable and request that the Court enter an order:

A.  Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing their counsel to represent the Class;

B.  Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class;

C.  Awarding injunctive relief as is necessary to protect the interests of Plaintiff and the Class;

D.  Enjoining Defendant from further deceptive practices and making untrue statements about the Data Breach and the stolen PII;

E.  Awarding Plaintiff and the Class damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F.  Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G.  Awarding attorneys' fees and costs, as allowed by law;

H.  Awarding prejudgment and post-judgment interest, as provided by law;

I.  Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J.  Granting such other or further relief as may be appropriate under the circumstances.

# JURY DEMAND

145.    Plaintiff demands a trial by jury on all issues so triable.

Dated: December 7, 2022                    Respectfully submitted,

ADAM J SCHWARTZ, ATTORNEY AT LAW

By: /s/ *Adam J Schwartz*

Additional Counsel:

Matthew R. Wilson (290473)
Michael J. Boyle, Jr. (SBN 258560)
Jared W. Connors (*pro hac vice* to be filed)
MEYER WILSON CO., LPA

Samuel J. Strauss (*pro hac vice* to be filed)
Raina Borrelli (*pro hac vice* to be filed)
TURKE & STRAUSS LLP

*Counsel for Plaintiff and the Proposed Class*