MEYER WILSON CO., LPA
Matthew R. Wilson (SBN 290473)
mwilson@meyerwilson.com
Michael J. Boyle, Jr. (SBN 258560)
mboyle@meyerwilson.com
Jared W. Connors (*pro hac vice*)
jconnors@meyerwilson.com
305 W. Nationwide Blvd.
Columbus, OH 43215
Telephone: (614) 224-6000
Facsimile:  (614) 224-6066

TURKE & STRAUSS LLP
Samuel J. Strauss (*pro hac vice* to be filed)
sam@turkestrauss.com
Raina Borrelli (*pro hac vice* to be filed)
raina@turkestrauss.com
613 Williamson St., #201
Madison, WI 53703
P: (608) 237-1775

*Attorneys for Plaintiff and the Proposed Class*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

MARK MEDOFF, individually and on behalf of all others similarly situated,

        Plaintiff,

  v.

MINKA LIGHTING, LLC,

        Defendant.

Case No. 2:22-CV-08885

**Plaintiff's Notice of Unopposed Motion to Preliminarily Approve Class Action Settlement and Memorandum of Points and Authorities in Support**

Date: October 26, 2023
Time: 10:00 AM
Courtroom 5B

Hon. Hernán D. Vera

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**

    **PLEASE TAKE NOTICE** that on October 26, 2023 at 10:00 AM, or as soon thereafter as this matter may be heard by the Honorable Hernán D. Vera in Courtroom 5B of the above-entitled Court, located at 350 West First Street, Los Angeles, California 90012, Plaintiff will and hereby does move the Court pursuant to Federal Rule of Civil Procedure 23 for an order: (1) certifying the proposed Settlement Class; (2) preliminarily approving the proposed Settlement; (3) approving the proposed notice plan; and (4) setting a date for a final approval hearing. This motion is based on the incorporated memorandum of law, the declarations and exhibits filed herewith, the pleadings and papers in this action, and any additional arguments of counsel. Plaintiff's counsel conferred with Defendant's counsel, and Defendant does not oppose this motion.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

SUMMARY OF PROPOSED SETTLEMENT ................................................................. 2

    A.   Proposed Settlement Class .................................................................... 2

    B.   Settlement Benefits .............................................................................. 2

    C.   Scope of Release ................................................................................... 3

    D.   Attorney Fees and Service Award ........................................................ 3

    E.   Notice and Settlement Administration .................................................. 4

ARGUMENT ..................................................................................................................... 4

I.   The Court should preliminarily approve the proposed settlement. ................... 4

    A.   The Class was adequately represented. ................................................ 5

    B.   The settlement was negotiated at arm's length. .................................... 5

    C.   The settlement provides adequate relief. .............................................. 6

    D.   The settlement treats class members equitably. .................................... 9

II.   The Court should certify the settlement class. .................................................. 10

    A.   The proposed class is sufficiently numerous. ....................................... 10

    B.   There are questions of law and fact common to the class. .................... 10

    C.   The Class Representative's claims and defenses are typical of those he

           seeks to represent. ................................................................................ 11

    D.   Class counsel and the class representatives are adequate. .................... 12

    E.   Common questions predominate, such that classwide resolution is superior

           to individual adjudication. ..................................................................... 12

III.   The proposed notice plan is consistent with Rule 23 and due process. ........... 14

CONCLUSION .................................................................................................................. 15

CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.2 ................................................. 16

CERTIFICATE OF SERVICE ......................................................................................... 16

PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 2:22-CV-08885

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010 (9th Cir. 2000)......................................7

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ............................................................ 10, 13, 14

*Briseno v. Henderson*, 998 F.3d 1014 (9th Cir. 2021)......................................................6

*Cabrera v. Google LLC*, 2023 U.S. Dist. LEXIS 142643 (N.D. Cal. Aug. 15, 2023) ...................7

*Churchill Vill., LLC  v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)........................................15

*Community Res. For Indep. Living v. Mobility Works of Cal.*,

    533 F. Supp. 3d 881 (N.D. Cal. 2020)......................................................5

*Conti v. Am. Honda Motor Co.*, 2022 U.S. Dist. LEXIS 1561 (C.D. Cal. Jan. 4, 2022) .............5, 6

*Cottle v. Plaid Inc.*, 340 F.R.D. 356 (N.D. Cal. 2021)......................................................6

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011)......................................................12

*Espinosa v. Cal. Coll. of San Diego, Inc.*,

    2018 U.S. Dist. LEXIS 60106 (S.D. Cal. Apr. 9, 2018) ...........................................10

*Gaston v. Fabfitfun, Inc.*, 2021 U.S. Dist. LEXIS 147383 (C.D. Cal. Apr. 2, 2021) .....................1

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)...........................................................11

*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909 (9th Cir. 1964) ................................10

*Hashemi v. Bosley, Inc.*, 2022 U.S. Dist. LEXIS 119454 (C.D. Cal. Feb. 22, 2022) .............. 1, 11

*Hernandez v. Burrtec Waste & Recycling Servs., LLC*, 2023 U.S. Dist. LEXIS 147432 (C.D. Cal.

    Aug. 21, 2023)......................................................6

*In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018)............................... 1, 13

*In re Apple Inc. Device Performance Litig.*, 50 F.4th 769 (9th Cir. 2022)...................................10

*In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ...............................6

*In re Easysaver Rewards Litig.*, 906 F.3d 747 (9th Cir. 2018)......................................................9

*In re Experian Data Breach Litig.*, 2019 U.S. Dist. LEXIS 81243 (C.D. Cal. May 10, 2019) .......1

*In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539 (9th Cir. 2019) (en banc) ..................13

*In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015) ........................................11

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ..................................... 5

*In re MyFord Touch Consumer Litig.*, 2019 U.S. Dist. LEXIS 53356 (N.D. Cal. Mar. 28, 2019) . 5

*In re Premera Blue Cross Cust. Data Sec. Breach Litig.*, 2019 U.S. Dist. LEXIS 127093 (D. Or. July 29, 2019) ........................................................................................................... 1

*In re Wireless Facilities, Inc. Securities Litig. II*, 253 F.R.D. 607 (S.D. Cal. 2008) ................... 12

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS 129939 (N.D. Cal. July 20, 2020) ................................................................................................ 11, 12, 13, 14

*Jackson v. Fastenal Co.*, 2023 U.S. Dist. LEXIS 87675 (E.D. Cal. May 18, 2023) ................... 10

*Mandalevy v. Bofi Holding, Inc.*, 2022 U.S. Dist. LEXIS 89205 (S.D. Cal. Mar. 17, 2022) ......... 9

*Mehta v. Robinhood Fin. LLC*, 2021 U.S. Dist. LEXIS 253782 (N.D. Cal. May 6, 2021) ............ 7

*Odom v. ECA Mktg.*, 2021 U.S. Dist. LEXIS 101128 (C.D. Cal. May 27, 2021) ........................ 10

*Ramirez v. Rite Aid Corp.*, 2022 U.S. Dist. LEXIS 109069 (C.D. Cal. May 3, 2022) ................. 10

*Rodriguez v. W. Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ................................... 5

*Rollins v. Dignity Health*, 336 F.R.D. 456 (N.D. Cal. 2020) ........................................... 5

*Saucillo v. Peck*, 25 F.4th 1118 (9th Cir. 2022) ............................................................. 5

*Stanton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ................................................. 9, 12

*Sung v. Schurman Fine Papers*, 2018 U.S. Dist. LEXIS 40379 (N.D. Cal. Mar. 11, 2018) ........................................................................................ 11, 12, 13

*Toolajian v. Air Methods Corp.*, 2020 U.S. Dist. LEXIS 250904 (N.D. Cal. Apr. 24, 2020) . 14, 15

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016) .............................................. 13

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) .......................................... 11

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010). ................................. 14

**Rule**

FED. R. CIV. P. 23 ........................................................................................................ passim

# TABLE OF AUTHORITIES
### (continued)

**Page**

**Other Authorities**

Max Meglio, Note, *Embracing Insecurity: Harm Reduction Through a No-Fault Approach to Consumer Data Breach Litigation*, 61 B.C. L. Rᴇᴠ. 1223 (2020) ............................................... 8

4 William Rubenstein, *Newberg on Class Actions* § 13:56 (5th ed. 2020)..................................... 9

# INTRODUCTION

Plaintiff Mark Medoff is pleased to present to the Court with a proposed class action settlement for preliminary approval. In exchange for a release of liability arising from the data security incident described in the operative complaint, Defendant Minka Lighting, LLC has agreed to establish a $700,000 *non-reversionary* common fund for the benefit of the proposed Settlement Class. The total value of the Settlement Fund, on a per-class-member basis, is exceedingly favorable when compared to other settlements like it. Courts in this circuit have consistently approved data breach settlements providing class members $3 or less per person; *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 318 (N.D. Cal. 2018) ($1.45 per class member is "meaningful consideration"); *In re Experian Data Breach Litig.*, 2019 U.S. Dist. LEXIS 81243, *25 (C.D. Cal. May 10, 2019) (settlement provided "a $1.47 payout per person, which compares favorably to other approved data breach settlements"); *In re Premera Blue Cross Cust. Data Sec. Breach Litig.*, 2019 U.S. Dist. LEXIS 127093, *65–67 (D. Or. July 29, 2019) (fund worth $3.02 per class member provides "significant value"); *Gaston v. Fabfitfun, Inc.*, 2021 U.S. Dist. LEXIS 147383, *18–20 & n.1 (C.D. Cal. Apr. 2, 2021) ($1.42 per class member is "substantial" relief "on par with that in other data breach settlements"). The result Plaintiff achieved in this case is remarkable in comparison. *Cf. Hashemi v. Bosley, Inc.*, 2022 U.S. Dist. LEXIS 119454, *19 (C.D. Cal. Feb. 22, 2022) ("Plaintiffs' $15 to $275 per Class Member value estimates greatly exceed the settlement value per class member in comparable data breach cases."). But here, by providing a $700,000 common fund (less attorneys' fees/expenses and settlement administration costs) for a class of only 6,577 class members, this settlement will provide far more.

Therefore, Plaintiff respectfully moves the Court for an order: (1) certifying the proposed Settlement Class; (2) preliminarily approving the proposed Settlement; (3) approving the proposed notice plan; and (4) setting a date for a final approval hearing.

## SUMMARY OF PROPOSED SETTLEMENT

### A.    Proposed Settlement Class

This case involves a data security incident. *See* First Am. Compl, ECF No. 23 at ¶¶ 14–20. After learning that his name and social security number had been compromised, Plaintiff Mark Medoff sued Defendant Minka Lighting LLC for damages and equitable relief on behalf of himself and others similarly situated. *Id.* at ¶¶ 34–35. The operative complaint alleges claims for negligence, negligence per se, breach of contract, and unjust enrichment. *Id.* at ¶¶ 64–124. The Court subsequently held that Plaintiff had Article III standing to recover damages, but not injunctive relief. *See* MTD Order, ECF No. 37 at PageID 247–54. On the merits, the Court dismissed Plaintiff's claims for negligence, negligence per se, and unjust enrichment, but allowed Plaintiff's claim for breach of implied contract to proceed. *Id.* at 254–62.

The parties then agreed to mediate the case before Bennett G. Picker of Stradley, Ronon, Stevens & Young, LLP, a mediator who specializes in cases of this type. *See* Joint Decl. at ¶ 9. In connection with the mediation, the parties made pre-discovery exchanges of information necessary to evaluate the strength of their positions and prepared adversarial mediation statements. *Id.* at ¶¶ 10–12. The parties then agreed to a settlement, with the proposed Settlement Class defined as follows:

> All individuals in the United States whose personal information was compromised in the Data Security Incidents that affected Minka Lighting, LLC from approximately December 16, 2021– April 5, 2022 and June 27, 2022–June 29, 2022, as alleged in the First Amended Class Action Complaint.

S.A. § 1.34. The Settlement Class includes only 6,577 individuals. Joint Decl. at ¶ 10.

### B.    Settlement Benefits

Under the proposed settlement, Minka Lighting will pay $700,000.00 to create a Settlement Fund for the benefit of the class members. S.A. §§ 1.17, 3.2. This fund is non-reversionary, meaning that after paying for attorney fees, litigation costs, and administration expenses, all funds will be distributed to class members and not a penny will revert to Minka Lighting. *See* S.A. §§ 4.1.6–4.1.8.

After the Settlement Administrator pays for administration costs and attorney fees, the

remaining funds will be distributed to Class Members through a claims process. S.A. §§ 4.1, 4.1.9. Those funds will be allocated as follows. First, any class member may submit a Reimbursement Claim for documented economic losses up to $7,500 incurred in connection with the data security incident. S.A. § 4.1.1. To ensure that the settlement fund is not diluted by fraud, all Reimbursement Claims must be supported by documentation and a signed statement indicating that those costs were incurred in connection with the data security incident and have not been recovered. S.A. § 4.1.2 & Ex. C. Second, any class member may submit a claim for Other Losses, such as inconvenience, lost time, or privacy concerns. S.A. § 4.1.6. The claim form makes clear that class members are not required to quantify or document any economic loss in order to submit a claim for Other Losses. S.A. at Ex. D. After valid Reimbursement Claims and other settlement expenses are paid, the remaining funds will be distributed pro rata to Other Loss claimants. S.A. § 4.1.7.

### C.    Scope of Release

Members of the settlement classes who do not opt out will release "all claims and causes of action that were or could have been raised in this action" against Minka Lighting. S.A. § 1.26; *see also* S.A. § 8.1. This is a standard release, covering only those claims that arise from the data security incident.

### D.    Attorney Fees and Service Award

The Settlement also provides that Class Counsel may request up to one-third of the Settlement Fund, plus litigation costs, as well as a $2,500 service award for Mr. Medoff. S.A. § 9.1. Mindful that the benchmark percentage fee award in this Circuit is 25% of a common fund, which may be adjusted upwards or downwards by the Court, Class Counsel will file a brief explaining why their request is appropriate in a separate motion filed at least 14 days prior to the objection deadline. S.A. § 9.2. The settlement does *not* contain a so-called "clear sailing" provision, so "Minka Lighting is free to support, oppose, or take no position with respect to any such Fee Application." S.A. § 9.1.  In addition, the settlement is not contingent on the Court approving the requested fees or service awards. S.A. § 9.3.

1

### E.    Notice and Settlement Administration

2      The Settlement provides for a robust notice program consisting of: (1) direct mail notice

3   to all class members with known mailing addresses or, where a mailing address is not available,

4   by email to the last known personal email address; and (2) publication notice through a settlement

5   website. The Notice and Claim Forms are clear and concise and inform Settlement Class

6   Members of their rights and options under the Settlement, including detailed instructions on how

7   to make a claim, object to the Settlement, or opt-out of the Settlement. *See* S.A. at Ex. A (email

8   notice), Ex. B. (long-form notice), Ex. C (Reimbursement Claim form), Ex. D (Other Loss Claim

9   form). In addition to the direct notice, the Administrator will also establish a dedicated Settlement

10   Website and will maintain and update the website throughout the Claims Period, with the forms

11   of Short Notice, Postcard, Long Notice, and Claim Form approved by the Court, as well as the

12   Settlement Agreement. S.A. § 6.2.5. The Settlement Administrator will also make a toll-free help

13   line staffed with a reasonable number of live operators available to provide Settlement Class

14   Members with additional information about the settlement. S.A. § 6.2.4.

15      Analytics Consulting, LLC, an experienced and well-regarded class action settlement

16   administrator, has been retained to serve as Settlement Administrator, subject to the Court's

17   approval. S.A. § 1.32, 6.1; Joint Decl. at ¶. Analytics has estimated that notice and administration

18   costs will total approximately $22,727, a very small percentage of the $700,000 Settlement Fund.

19   Joint Decl. at ¶ 15.

20                                   **ARGUMENT**

21   **I.    The Court should preliminarily approve the proposed settlement.**

22      Courts may approve a class action settlement if it is "fair, reasonable, and adequate." FED.

23   R. CIV. P. 23(e)(2). Relevant considerations include whether: (A) "the class representatives and

24   class counsel have adequately represented the class"; (B) "the proposal was negotiated at arm's

25   length"; (C) "the relief provided for the class is adequate"; and (D) "the proposal treats class

26   members equitably relative to one another." *Id.* "Within this framework, preliminary approval of

27   a settlement is appropriate if 'the proposed settlement appears to be the product of serious,

28   informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant

preferential treatment to class representatives or segments of the class, and falls within the
range of possible approval.'" *Rollins v. Dignity Health*, 336 F.R.D. 456, 461 (N.D. Cal. 2020)
(citation omitted). That standard is more than satisfied here.

### A.    The Class was adequately represented.

When considering adequacy of representation under Rule 23(e)(2)(A), courts ask two
questions: "(a) do the named plaintiffs and their counsel have any conflicts of interest with other
class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously
on behalf of the class?" *In re MyFord Touch Consumer Litig.*, 2019 U.S. Dist. LEXIS 53356, at
*24 (N.D. Cal. Mar. 28, 2019) (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th
Cir. 2000)). Here, neither class counsel nor the class representatives have any conflicts of interest.
Moreover, class counsel vigorously represented the interests of the class during the mediation and
obtained informal discovery to ensure they had sufficient information to evaluate the merits of the
case. *See* Joint Decl. at ¶¶ 10–12; *Conti v. Am. Honda Motor Co.*, 2022 U.S. Dist. LEXIS 1561, at
*24 (C.D. Cal. Jan. 4, 2022) (noting that adequacy may depend on whether class counsel "had an
adequate information base" to make an informed decision regarding settlement). This factor
weighs in favor of approval.

### B.    The settlement was negotiated at arm's length.

Another important consideration is whether the settlement "was negotiated at arm's
length." FED. R. CIV. P. 23(e)(2)(B). Although this factor does not create a presumption of
fairness, *see Saucillo v. Peck*, 25 F.4th 1118, 1132 (9th Cir. 2022), "such negotiations can weigh
in favor of approval," *Community Res. For Indep. Living v. Mobility Works of Cal.*, 533 F. Supp.
3d 881, 888 (N.D. Cal. 2020). *See also Rodriguez v. W. Publishing Corp.*, 563 F.3d 948, 965 (9th
Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive,
negotiated resolution."). In this case, the parties' interactions were at all times adversarial. The
parties spent considerable time and effort negotiating the settlement, including through private
mediation with Bennett G. Picker, an experienced mediator. *See* Joint Decl. at ¶¶ 9–12 This
strongly indicates that there was no collusion, and indeed there was none. *See Conti*, 2022 U.S.
Dist. LEXIS 1561 at *26 (noting that that presence of a mediator suggests negotiations "were

conducted in a manner that would protect and further class interests").

When analyzing Rule 23(e)(2)(B), courts also ask whether any of the *Bluetooth* factors are present, which could suggest the presence of collusion. *See Cottle v. Plaid Inc.*, 340 F.R.D. 356, 376 (N.D. Cal. 2021) (citing *Briseno v. Henderson*, 998 F.3d 1014 (9th Cir. 2021)); *see also In re Bluetooth Headset Products Liab. Litig*., 654 F.3d 935, 947 (9th Cir. 2011). "These *Bluetooth* factors are (1) when counsel receive a disproportionate distribution of the settlement or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the payment of attorneys' fees is separate and apart from class funds; and (3) when the parties arrange for benefits that are not awarded to revert to the defendants rather than being added to the class fund." *Cottle*, 340 F.R.D. at 376 (quotation marks omitted) (quoting *Briseno*, 998 F.3d at 1023). None of the *Bluetooth* factors are present here. First, the size of the potential fee is within the range of possible approval, as "California courts routinely award attorneys' fees of one-third of the common fund," despite the Ninth Circuit's 25% benchmark. *Hernandez v. Burrtec Waste & Recycling Servs., LLC*, 2023 U.S. Dist. LEXIS 147432, at *15 (C.D. Cal. Aug. 21, 2023) (citation omitted). And, of course, the Court will ultimately have discretion over the amount of the attorneys' fee award after reviewing Class Counsel's motion. S.A. § 9.3. Second, any award of attorney fees will be paid from the same fund as the class, rather than a separate payment, thereby aligning Class Counsel's interests precisely with those of their clients. S.A. § 3.3.5. Third, this is a common fund settlement with no reversion. Therefore, this Settlement is non-collusive and was negotiated at arm's length.

**C.    The settlement provides adequate relief.**

Rule 23(e)(2)(C) requires courts to consider whether "the relief provided for the class is adequate, taking into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." FED. R. CIV. P. 23(e)(2)(C). The relief provided by this settlement is a common fund worth $700,000, which, after attorneys' fees/expenses and modest administration costs are paid,

will be distributed only to claimants from among the 6,577 class members. This compares exceedingly favorably to other data breach settlements that have been approved in this, and every other, circuit. The factors enumerated in Rule 23(e)(2) further demonstrate that this settlement provides excellent relief for the class.

*Cost, Risk, and Delay of Trial and Appeal.* While Plaintiff is confident of the ultimate outcome of the case, he would face several challenges going forward. On the merits, California law is unsettled as to many issues prevalent in data breach litigation. Take the Court's order in this case on Defendant's motion to dismiss. Some California courts have held (correctly, in Plaintiff's view) that the damages element of a negligence claim is satisfied by a loss of privacy caused by the exposure of sensitive information in a data breach. *See, e.g.*, *Mehta v. Robinhood Fin. LLC*, 2021 U.S. Dist. LEXIS 253782, at *19 (N.D. Cal. May 6, 2021) ("Plaintiffs adequately allege damages, including . . . privacy injuries associated with having their sensitive personal and financial information disclosed."). Yet the Court here was unpersuaded by those decisions. *See* MTD Order, ECF No. 37 at PageID 257 n.10. Similarly, while the Court upheld Plaintiff's implied contract claim on the grounds that subsequent state court decisions abrogated the discussion of nominal damages in *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000), other district courts in data privacy cases have suggested that they remain bound by *Aguilera*. *Compare* MTD Order, ECF No. 37 at PageID 260, *with Cabrera v. Google LLC*, 2023 U.S. Dist. LEXIS 142643, at *17 n.5 (N.D. Cal. Aug. 15, 2023). All this goes to show that the law of data privacy is rapidly evolving and difficult to predict. And even if Plaintiff prevailed on the merits, there likely would have been an appeal.

Moreover, the Court previously suggested "that at a later point there may be questions regarding the sufficiency of Plaintiff's damages given that Defendant offered [one year of] identity monitoring services as a result of the breach." MTD Order, ECF No. 37 at PageID 256. In Judge Wilson's view, it was possible that this offer would "take the punch out of the cost of monitoring," which was one of the damages theories Plaintiff would have presented at the class certification stage. Hr. Tr., ECF No. 35 at PageID 226. Plaintiff respectfully disagrees with that view because, as counsel stated at the hearing, "criminals often wait many years to commit

identity theft." *Id.* at 225. But the Court ultimately reserved the question, meaning there was significant risk for the class that the Court would limit or reject entirely Plaintiff's model for calculating classwide damages.

In addition, class certification and summary judgment motions will take, at a minimum, a year to brief and obtain rulings from the Court. And while summary judgment might have been able to narrow some of the legal questions, it is highly likely that a jury would have to decide whether Defendant exercised proper care in protecting its data. This means that a jury trial could be held no earlier than late 2024.  Moreover, to the best of Class Counsel's knowledge, "no data breach case has gone to trial." Max Meglio, Note, *Embracing Insecurity: Harm Reduction Through a No-Fault Approach to Consumer Data Breach Litigation*, 61 B.C. L. REV. 1223, 1235 (2020).  As such, a trial on the merits would be truly uncharted territory, making the risks difficult to fully evaluate by any party. This is on top of the complexities and risks of class trials that, while manageable, are more significant than a single-plaintiff litigation.

*Distribution Method.* The claims process is simple, straightforward, and equitable. The Claim Form is simple and easy to understand, and it may be submitted in paper or online. *See* S.A., at Ex. C–D. Class members submitting Reimbursement Claims need only provide reasonable documentation showing that they actually incurred the expenses and that they have a plausible connection to the data security incident. S.A. § 4.1.1. Class members submitting claims for Other Losses need not provide any documentation of how they were affected by the data security incident, as the claim form makes clear. S.A. § 4.1.6 & Ex. D. Any disputes over the validity of a claim will be resolved by a neutral referee. S.A. § 4.1.3. And critically, no matter how many claims are made, every dollar of the $700,000 will be paid out to class members who make a claim; the specific amount per class member will simply depend on the number of claims that are made.

*Attorney Fees.* As discussed above, Class Counsel may request up to one-third of the Settlement Fund as Attorney Fees. S.A. § 9.1. The Settlement is not contingent upon an award of fees, so the Court need not determine the fee award in order to grant preliminary approval. *See* S.A. § 9.3; *Stanton v. Boeing Co.*, 327 F.3d 938, 972 (9th Cir. 2003) (explaining that if a fee is

awarded "using common fund fee principles," then "the agreement as a whole does not stand or fall on the amount of fees"); *In re Easysaver Rewards Litig.*, 906 F.3d 747, 762 (9th Cir. 2018) (vacating fee award but otherwise approving settlement because fee was awarded under common fund principles and the "settlement agreement expressly does not depend on approval of the fee award"). Class Counsel will address fees in a separate motion that substantiates the reasonableness of their requests.

*Rule 23(e)(3) Agreement.* The Parties did not make any side agreements subject to disclosure under FED. R. CIV. P. 23(e)(3).

### D.    The settlement treats class members equitably.

When considering whether the settlement "treats class members equitably relative to each other," FED. R. CIV. P. 23(e)(2)(D), courts seek "to ensure that similarly situated class members are treated similarly and that dissimilarly situated class members are not arbitrarily treated as if they were similarly situated," *Mandalevy v. Bofi Holding, Inc.*, 2022 U.S. Dist. LEXIS 89205, *28 (S.D. Cal. Mar. 17, 2022) (quoting 4 William Rubenstein, *Newberg on Class Actions* § 13:56 (5th ed. 2020)). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." FED. R. CIV. P. 23, advisory committee note to 2018 amendment. Here, all class members have an equal right to file a claim against the Settlement Fund. And while class members who were victims of identity theft may ultimately receive a higher payment than those who have not suffered any out-of-pocket losses, that procedure is appropriate in light of the genuine difference between how these individuals were affected by the data security incident.

In addition, each Mr. Medoff will request a $2,500 service award. S.A. § 9.1. "Class representative service awards are well-established as legitimate in the Ninth Circuit." *Ramirez v. Rite Aid Corp.*, 2022 U.S. Dist. LEXIS 109069, *21 (C.D. Cal. May 3, 2022); *see also In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 785 (9th Cir. 2022) (reaffirming "that 'reasonable incentive awards' to class representatives 'are permitted'"). "In the Ninth Circuit, courts have found that $5,000 is a presumptively reasonable service award." *Jackson v. Fastenal*

*Co.*, 2023 U.S. Dist. LEXIS 87675, at *23 (E.D. Cal. May 18, 2023). Therefore, the $2,500 incentive award contemplated in this case is well-within the range of possible approval. *See, e.g.*, *Espinosa v. Cal. Coll. of San Diego, Inc.*, 2018 U.S. Dist. LEXIS 60106, at *36 (S.D. Cal. Apr. 9, 2018) ("The $2,500 incentive award is also well within the acceptable range awarded in similar cases."); *Odom v. ECA Mktg.*, 2021 U.S. Dist. LEXIS 101128, at *16 (C.D. Cal. May 27, 2021) (preliminarily approving $2,500 service award where settlement provided $990,000 for about 200,000 class members). Class Counsel will further substantiate their request for Mr. Medoff's service award in their fee application.

## II.    The Court should certify the settlement class.

The parties have agreed (for settlement purposes only) to certification of the Settlement Class, *see* S.A. § 2.10, but the Court must still determine whether each of Rule 23(a)'s requirements and at least one of Rule 23(b)'s requirements are satisfied. *See Amchem Prods. v. Windsor*, 521 U.S. 5911, 622 (1997). Those prerequisites are satisfied here.

### A.    The proposed class is sufficiently numerous.

Under Rule 23(a)(1), numerosity is satisfied if a class contains so many individuals "that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). "Impracticability does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class.'" *Harris v. Palm Springs Alpine Estates, Inc*., 329 F.2d 909, 913–14 (9th Cir. 1964) (citation omitted). "[W]here the number of class members exceeds forty, and particularly where class members number in excess of one hundred, the numerosity requirement will generally be found to be met." *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 583 (N.D. Cal. 2015) (citation omitted). There are 6,577 members of the Settlement Class. Joint Decl. at ¶ 10. This is well over the threshold to establish numerosity.

### B.    There are questions of law and fact common to the class.

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(1). This standard may be satisfied by "even a single common question." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (cleaned up). Here, the central question raised by the litigation is whether Defendant took reasonable steps to protect the personal

information of class members that resided in Defendant's systems. That issue depends on the acts and omissions of Defendant and thus is a question common to the class. *See Hashem v. Bosley, Inc.,* 2022 U.S. Dist. LEXIS 119454, at *7 (C.D. Cal. Feb. 22, 2022) (finding commonality where "Plaintiffs maintain that there are multiple common question of law or fact—i.e., whether Defendant breached its duty to safeguard the Class's PII, whether Defendant unreasonably delayed in notifying the Class about the data breach, and whether Defendant's security measures or lack thereof violated various statutory provisions."); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS 129939, at *22 (N.D. Cal. July 20, 2020) (finding commonality in a data breach case, as "[i]n the case's current posture, whether Yahoo employed sufficient security measures to protect the Settlement Class Members' Personal Information from the Data Breaches lies at the heart of every claim."); *Sung v. Schurman Fine Papers*, 2018 U.S. Dist. LEXIS 40379, at *9–10 (N.D. Cal. Mar. 11, 2018) (finding commonality in a data breach case where "[t]he lawsuit involves a single data breach"). Therefore, commonality is satisfied.

### C. The Class Representative's claims and defenses are typical of those he seeks to represent.

"Typicality requires a showing that the named plaintiffs are members of the class they represent and that their claims are 'reasonably co-extensive with those of absent class members,' but not necessarily 'substantially identical.'" *Hashemi,* 2022 U.S. Dist. LEXIS 119454, at *7 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id*. at *7-8 (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (internal citations omitted)).

As with commonality, typicality is routinely met in data breach cases, as both the class representative and the other members of the class were subject to the same event that gives rise the claims in the case, and thus subject to the same consequences of the allegedly improper data protection. *See In re Yahoo!*, 2020 U.S. Dist. LEXIS 129939, at *25 ("the Settlement Class Representatives, like the Settlement Class as a whole, were all Yahoo users who allegedly either

suffered identity theft and/or were placed at substantial risk for identity theft. Accordingly, Yahoo's allegedly inadequate data security harmed the Settlement Class Representatives in a common way as the rest of the Settlement Class Members."); *Sung*, 2018 U.S. Dist. LEXIS 40379, at *10 (finding typicality where "[a]ll Settlement Employee Class Members allege that they provided PII to SRG as a condition of employment, and they may have provided PII for their spouses or other dependents.")  Similarly here, Plaintiff's claim is the same as those of the other members of the class, as they stem from the same incident and are the result of the same alleged action (or lack of action) on the part of Defendant.

### D.    Class counsel and the class representatives are adequate.

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class."  FED. R. CIV. P. 23(a)(4). Two questions are relevant to adequacy: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *In re Wireless Facilities, Inc. Securities Litig. II*, 253 F.R.D. 607, 611 (S.D. Cal. 2008) (quoting *Stanton*, 327 F.3d at 958). Class Counsel are experienced class action and data privacy litigators with the knowledge to effectively evaluate and prosecute this case. Joint Decl. at ¶¶ 2–7. Mr. Medoff has diligently represented the class, including by following-up on receiving a data breach notification by calling an attorney for Minka Lighting to investigate and contacting his lawyers to discuss (and ultimately prosecute) this case. *See, e.g.*, FAC, ECF No. 23 at ¶¶ 35, 37, 70. Therefore, adequacy is satisfied.

### E.    Common questions predominate, such that classwide resolution is superior to individual adjudication.

Certification of a settlement class is proper under Rule 23(b)(3) if "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). Because Plaintiff seeks certification of a settlement class, the Court need not consider manageability concerns. *See Amchem*, 521 U.S. at 619–20; *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 558 (9th Cir. 2019) (en banc).

1    Both predominance and superiority are satisfied here.

2            When evaluating predominance, courts ask "whether the common, aggregation-enabling,

3    issues in the case are more prevalent or important than the non-common, aggregation-defeating,

4    individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). That test is

5    satisfied here because "Plaintiffs' case for liability depends, first and foremost, on whether

6    [Defendant] used reasonable data security to protect Plaintiffs' personal information." *In re

7    Anthem, Inc. Data Breach Litig.*, 327 F.R.D. at 312. As a result, "the focus" of this case is "on the

8    extent and sufficiency of the specific security measures that [Defendant] employed," which

9    presents "the precise type of predominant question that makes class-wide adjudication

10   worthwhile." *Id.* Therefore, predominance is satisfied. *See In re Yahoo!,* 2020 U.S. Dist. LEXIS

11   129939, at *37–38 (applying same reasoning as *Anthem*); *Sung*, 2018 U.S. Dist. LEXIS 40379, at

12   *11 (finding predominance because "[a]ll claims arise from one data breach, and liability can be

13   determined on a class-wide basis").

14           Classwide resolution is also superior to individual adjudication. When evaluating

15   superiority, courts ask whether "the aggregation of these claims can be expected to save time,

16   effort and expense, and to promote uniformity without sacrificing procedural fairness," such that

17   "a class action is superior to other available methods for fairly and efficiently adjudicating the

18   controversy." *Toolajian v. Air Methods Corp.*, 2020 U.S. Dist. LEXIS 250904, at *17 (N.D. Cal.

19   Apr. 24, 2020) (internal quotation marks and citations omitted). "Where recovery on an

20   individual basis would be dwarfed by the cost of litigating on an individual basis, [the superiority]

21   factor weighs in favor of class certification." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d

22   1168, 1175 (9th Cir. 2010). In data breach cases, individual damages tend to be small, and

23   litigation costs tend to be expensive. *See In re Yahoo!*, 2020 U.S. Dist. LEXIS 129939, *40

24   ("[T]he amount at stake for individual Settlement Class Members is too small to bear the risks

25   and costs of litigating a separate action. Litigation costs would be quite high, given that the case

26   involves complex technical issues and requires substantial expert testimony."). Moreover, even if

27   class members were to pursue their claims individually, the efficiency gained by having a single

28   resolution of all the common issues dwarfs the benefit of allowing 6,577 individuals to pursue

1  their own cases. Therefore, the Court should certify the Settlement Class under Rule 23(b)(3).

2  **III.    The proposed notice plan is consistent with Rule 23 and due process.**

3  If the court determines that it will "likely be able to" approve the settlement, it must

4  "direct notice in a reasonable manner to all class members who would be bound" by the proposed

5  settlement. FED. R. CIV. P. 23(e)(1)(B). Class members are entitled to the "best notice that is

6  practicable under the circumstances" of any proposed settlement before it is finally approved by

7  the Court. FED. R. CIV. P. 23(c)(2)(B). "The notice may be by one or more of the following:

8  United States mail, electronic means, or other appropriate means." *Id.* To comply with due

9  process, notice must be "the best notice practicable under the circumstances, including individual

10  notice to all members who can be identified through reasonable effort." *Amchem Prods. v.*

11  *Windsor*, 521 U.S. 591, 617 (1997). Notice must state in plain, easily understood language: (i) the

12  nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or

13  defenses; (iv) that a class member may enter an appearance through an attorney if the member so

14  desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the

15  time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on

16  members under Rule 23(c)(3). FED. R. CIV. P. 23(c)(2)(B). "Notice is satisfactory if it generally

17  describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to

18  investigate and to come forward and be heard." *Toolajian*, 2020 U.S. Dist. LEXIS 250904, at

19  *31 (quoting *Churchill Vill., LLC  v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal

20  quotation marks and citation omitted).

21  Here, the parties have agreed to a robust notice program to be administered by Analytics

22  Consulting, LLC, a well-respected third-party class administrator that will use all reasonable

23  efforts to provide direct and individual notice to each potential Settlement Class Member via

24  email or mail. *See* S.A. § 6.2; Joint Decl. ¶ 15. The Notice and Claim Forms are clear and concise

25  and inform Settlement Class Members of their rights and options under the Settlement, including

26  detailed instructions on how to make a claim, object to the Settlement, or opt-out of the

27  Settlement. *See* S.A. at Ex. A (email notice), Ex. B. (long-form notice), Ex. C (Reimbursement

28  Claim form), Ex. D (Other Loss Claim form). In addition to the direct notice, the Administrator

will also establish a dedicated Settlement Website and will maintain and update the website throughout the Claims Period, with the forms of Short Notice, Postcard, Long Notice, and Claim Form approved by the Court, as well as the Settlement Agreement. S.A. § 6.2.5. The Settlement Administrator will also make a toll-free help line staffed with a reasonable number of live operators available to provide Settlement Class Members with additional information about the settlement. S.A. § 6.2.4. Because the notice plan ensures that Settlement Class Members' due process rights are amply protected, this Court should approve it.

## CONCLUSION

The Court should issue an order: (1) certifying the proposed Settlement Class; (2) preliminarily approving the proposed Settlement; (3) approving the proposed notice plan; and (4) setting a final approval hearing.


Dated: September 11, 2023                Respectfully submitted,


By:  */s/ Jared W. Connors*


Matthew R. Wilson (SBN 290473)
Michael J. Boyle, Jr. (SBN 258560)
Jared W. Connors (*pro hac vice*)
MEYER WILSON CO., LPA
305 W. Nationwide Blvd
Columbus, OH 43215
Telephone: (614) 224-6000
Facsimile:    (614) 224-6066
mwilson@meyerwilson.com
mboyle@meyerwilson.com
jconnors@meyerwilson.com

Samuel J. Strauss (*pro hac vice* to be filed)
Raina Borrelli (*pro hac vice* to be filed)
TURKE & STRAUSS LLP
613 Williamson St., #201
Madison, WI 53703
P: (608) 237-1775
sam@turkestrauss.com
raina@turkestrauss.com

PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 2:22-CV-08885

1

**CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.2**

2      The undersigned, counsel of record for Plaintiff, certifies that this brief contains 15 pages

3   (exclusive of the cover page, tables of contents and authorities, signature block, and certificates of

4   compliance and service), which complies with the page limit set forth in this Court's standing

5   order.

6                                          */s/ Jared W. Connors*

7                                          Jared W. Connors

8

9                          **CERTIFICATE OF SERVICE**

10     I hereby certify that on September 11, 2023 the foregoing was filed through the Court's

11  CM/ECF system, which will electronically serve all parties' counsel of record.

12

13                                         */s/ Jared W. Connors*

14                                         Jared W. Connors

15

16

17

18

19

20

21

22

23

24

25

26

27

28