MEYER WILSON CO., LPA
Matthew R. Wilson (SBN 290473)
mwilson@meyerwilson.com
Michael J. Boyle, Jr. (SBN 258560)
mboyle@meyerwilson.com
Jared W. Connors (*pro hac vice*)
jconnors@meyerwilson.com
305 W. Nationwide Blvd.
Columbus, OH 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

*Attorneys for Plaintiff and the Proposed Class*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARK MEDOFF, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MINKA LIGHTING, LLC,<br><br>Defendant. | Case No. 2:22-CV-08885<br><br>**Plaintiff's Notice of Unopposed Motion for Final Approval of Class Action Settlement and Memorandum of Points and Authorities in Support**<br><br>Date: June 13, 2024<br>Time: 10:00 AM<br>Courtroom 5B<br><br>Hon. Hernán D. Vera |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**

**PLEASE TAKE NOTICE** that on June 13, 2024 at 10:00 AM, or as soon thereafter as this matter may be heard by the Honorable Hernán D. Vera in Courtroom 5B of the above-entitled Court, located at 350 West First Street, Los Angeles, California 90012, Plaintiff will and hereby does move the Court pursuant to Federal Rule of Civil Procedure 23 for an order granting final approval of the proposed class action settlement. This motion is based on the incorporated memorandum of law, the declarations and exhibits filed herewith, the pleadings and papers in this action, and any additional arguments of counsel. Plaintiff conferred with Defendant, and Defendant does not oppose this motion.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 1

I. Summary of Settlement Terms............................................................................ 1

    A. Certified Settlement Class...................................................................... 1

    B. Settlement Benefits ................................................................................ 2

    C. Scope of Release .................................................................................... 3

    D. Attorney Fees and Service Award ......................................................... 3

    E. Notice and Settlement Administration ................................................... 4

II. Summary of the Notice and Claims Process ...................................................... 4

ARGUMENT ................................................................................................................... 5

I. The Settlement satisfies all requirements for final approval............................... 5

    A. The Class was adequately represented. .................................................. 5

    B. The settlement was negotiated at arm's length. ..................................... 6

    C. The settlement provides adequate relief. ............................................... 7

    D. The settlement treats class members equitably. ................................... 11

CONCLUSION ............................................................................................................. 12

CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.2 ............................................. 13

CERTIFICATE OF SERVICE ..................................................................................... 13

# TABLE OF AUTHORITIES

Page

**Cases**

*Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010 (9th Cir. 2000) .................................. 10

*Blackwell v. Kraemer N. Am., LLC*, 2024 U.S. Dist. LEXIS 92936 (D. Minn. May 7, 2024) ........ 9

*Bowdle v. King's Seafood Co., LLC* 2022 U.S. Dist. LEXIS 240383 (C.D. Cal. Oct. 19, 2022) .... 9

*Briseno v. Henderson*, 998 F.3d 1014 (9th Cir. 2021) .............................................................. 7

*Cabrera v. Google LLC*, 2023 U.S. Dist. LEXIS 142643 (N.D. Cal. Aug. 15, 2023) .................. 10

*Campbell v. Facebook, Inc.*, 951 F.3d 1106 (9th Cir. 2020) ...................................................... 5

*Carter v. Vivendi Ticketing United States LLC*, 2023 U.S. Dist. LEXIS 210744
    (C.D. Cal. Oct. 30, 2023) ..................................................................................................... 8

*Community Res. For Indep. Living v. Mobility Works of Cal.*,
    533 F. Supp. 3d 881 (N.D. Cal. 2020) .................................................................................. 6

*Conti v. Am. Honda Motor Co.*, 2022 U.S. Dist. LEXIS 1561 (C.D. Cal. Jan. 4, 2022) ................ 7

*Cottle v. Plaid Inc.*, 340 F.R.D. 356 (N.D. Cal. 2021) ................................................................ 6

*Gaston v. Fabfitfun, Inc.*, 2021 U.S. Dist. LEXIS 147383 (C.D. Cal. Apr. 2, 2021) .................... 8

*Gupta v. Aeries Software, Inc.*, 2023 U.S. Dist. LEXIS 36141 (C.D. Cal. Mar. 3, 2023) ............ 8

*Hashemi v. Bosley, Inc.*, 2022 U.S. Dist. LEXIS 119454 (C.D. Cal. Feb. 22, 2022) .................... 9

*Hernandez v. Burrtec Waste & Recycling Servs., LLC*, 2023 U.S. Dist. LEXIS 147432 (C.D. Cal.
    Aug. 21, 2023) ..................................................................................................................... 7

*Huffman v. Commscope, Inc.*, No. 5:23-cv-132, ECF No. 27 (W.D.N.C.) .................................... 8

*Hung V. Vu, D.D.S. v. I Care Credit, LLC*, 2022 U.S. Dist. LEXIS 201639 (C.D. Cal. Nov. 4,
    2022) ................................................................................................................................... 5

*In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018) .................................... 5

*In re Apple Inc. Device Performance Litig.*, 50 F.4th 769 (9th Cir. 2022) ................................. 12

*In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ............................. 7

*In re Easysaver Rewards Litig.*, 906 F.3d 747 (9th Cir. 2018) ................................................. 11

*In re LinkedIn User Privacy Litig.,* 309 F.R.D. 573 (N.D. Cal. 2015) ........................................ 1

# TABLE OF AUTHORITIES
## (continued)

**Page**

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) .................................................. 6

*In re MyFord Touch Consumer Litig.*, 2019 U.S. Dist. LEXIS 53356 (N.D. Cal. Mar. 28, 2019) . 6

*Jackson v. Fastenal Co.*, 2023 U.S. Dist. LEXIS 87675 (E.D. Cal. May 18, 2023) ..................... 12

*Koenig v. Lime Crime, Inc.*, 2018 U.S. Dist. LEXIS 245359 (C.D. Cal. Apr. 2, 2018) ................. 8

*Loomis v. Slendertone Distribution*, 2021 U.S. Dist. LEXIS 44047 (S.D. Cal. Mar. 8, 2021) ....... 5

*Mandalevy v. Bofi Holding, Inc.*, 2022 U.S. Dist. LEXIS 89205 (S.D. Cal. Mar. 17, 2022) ........ 12

*Mehta v. Robinhood Fin. LLC*, 2021 U.S. Dist. LEXIS 253782 (N.D. Cal. May 6, 2021) ............. 9

*Ramirez v. Rite Aid Corp.*, 2022 U.S. Dist. LEXIS 109069 (C.D. Cal. May 3, 2022) ................. 12

*Rodriguez v. W. Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) .................................................. 6

*Saucillo v. Peck*, 25 F.4th 1118 (9th Cir. 2022) ............................................................................ 6

*Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588 (N.D. Cal. 2020) ........................... 1, 5

*Stanton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ................................................................... 11

*Thomas v. Cleveland Brothers Holding Co.*, No. 1:23-cv-501, ECF No. 30 (M.D. Pa.). ............... 9

**Rules**

FED. R. CIV. P. 23(e)(2) ................................................................................................................. 5

FED. R. CIV. P. 23(e)(2)(A) ........................................................................................................... 6

FED. R. CIV. P. 23(e)(2)(B) ........................................................................................................... 6

FED. R. CIV. P. 23(e)(2)(C) ........................................................................................................... 7

FED. R. CIV. P. 23(e)(2)(D) ......................................................................................................... 12

FED. R. CIV. P. 23(e)(3) ............................................................................................................... 11

**Other Authorities**

Max Meglio, Note, *Embracing Insecurity: Harm Reduction Through a No-Fault Approach to Consumer Data Breach Litigation*, 61 B.C. L. REV. 1223 (2020) ........................................... 10

# INTRODUCTION

On December 12, 2023, following an in-person hearing, the Court granted preliminary approval of the proposed class action settlement. *See* Preliminary Approval Order, ECF No. 58. Since then, notice has gone out to class members as directed by the Court and consistent with the terms of the Settlement Agreement. *See* Declaration of Shari Lynne Grayson at ¶¶ 6–13. The reaction to the settlement has been overwhelmingly positive: not a single class member opted-out or objected to the settlement. *Id.* at ¶¶ 14–15; *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 598 (N.D. Cal. 2020) ("[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement are favorable to the class members."); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval."). If the proposed settlement is granted final approval, each valid claimant will receive a pro-rata share of the Net Settlement Fund, an estimated $1,758.72 per claimant. *Id.* at ¶ 19. This is an excellent result for the class, especially in the context of a data breach case. Therefore, Plaintiff moves the Court for an order granting final approval of the proposed settlement.

# BACKGROUND

## I. Summary of Settlement Terms

### A. Certified Settlement Class

This case arises out of a data security incident where threat actors are alleged to have hacked into the computer systems of Defendant Minka Lighting, LLC ("Minka"), a California-based limited liability company, and Plaintiff's former employer. 1, 11-19. *See* First Am. Compl, ECF No. 23 at ¶¶ 1, 11–20. After learning that information and documents containing personal information, including his social security number, may have been accessed by these unauthorized individuals and posted on the "dark web," , Plaintiff Mark Medoff sued Defendant Minka for damages and equitable relief on behalf of himself and others similarly situated. *Id.* at ¶¶ 34–35. The operative complaint alleges claims for negligence, negligence per se, breach of contract, and unjust enrichment. *Id.* at ¶¶ 64–124.

1   On Minka's motion to dismiss the complaint on Article III standing grounds, the Court
2   entered an order and opinion concluding that Plaintiff had alleged a concrete "privacy" injury
3   under California law sufficient to survive the motion to dismiss all damages claims on Article III
4   standing grounds, but he lacked standing to sue for injunctive relief because the Complaint did
5   not adequately allege that his "injury" would be repeated or that any injunction could alleviate the
6   threat posed by unknown third parties who could misuse his data. *See* MTD Order, ECF No. 37 at
7   247–54. The Court granted the motion to dismiss Plaintiff's claims for negligence, negligence per
8   se and unjust enrichment, but denied the motion as to Plaintiff's Implied Contract claim. *Id.* at
9   254–62.

10   The parties then agreed to mediate the case before Bennett G. Picker of Stradley, Ronon,
11   Stevens & Young, LLP, a mediator who specializes in cases of this type. *See* Joint Decl., ECF
12   No. 50-1, ECF No. 50-1 at ¶ 9. In connection with the mediation, the parties made pre-discovery
13   exchanges of information necessary to evaluate the strength of their positions and prepared
14   adversarial mediation statements. *Id.* at ¶¶ 10–12. Assisted by the experienced mediator, the
15   parties ultimately agreed to a settlement after a full day Mediation Session.  Thereafter,  the
16   parties negotiated and ultimately agreed upon the terms of a Class Action Settlement Agreement,
17   which contained a proposed Settlement Class defined as follows:

> All individuals in the United States whose personal information
> was compromised in the Data Security Incidents that affected
> Minka Lighting, LLC from approximately December 16, 2021–
> April 5, 2022 and June 27, 2022–June 29, 2022, as alleged in the
> First Amended Class Action Complaint.

21   S.A., ECF No. 50-2 at, ECF No. 50-2 at § 1.34.  Plaintiff filed a motion for preliminary approval
22   of class action settlement; after a hearing, the Court granted the motion and entered the
23   Preliminary Approval Order on December 12, 2023. *See* Preliminary Approval Order, ECF No.
24   58. The Settlement Class includes only 6,577 individuals. Joint Decl., ECF No. 50-1 at ¶ 10.

25   **B.      Settlement Benefits**

26   Under the proposed settlement, Minka Lighting will pay $700,000.00 to create a
27   Settlement Fund for the benefit of the class members. S.A., ECF No. 50-2 at §§ 1.17, 3.2. This
28   fund is non-reversionary, meaning that after paying for attorney fees, litigation costs, and

administration expenses, all funds will be distributed to class members and not a penny will revert to Minka Lighting. *See id.* at §§ 4.1.6–4.1.8. Those funds will be allocated as follows: First, all class members were allowed to submit a Reimbursement Claim for documented economic losses up to $7,500 incurred in connection with the data security incident. *Id.* at § 4.1.1. To ensure that the settlement fund is not diluted by fraud, all Reimbursement Claims were required to be supported by documentation and a signed statement indicating that those costs were incurred in connection with the data security incident and have not been recovered. *Id.* at § 4.1.2 & Ex. C. Second, all class member were also able to submit a claim for Other Losses, such as inconvenience, lost time, or privacy concerns. *Id.* at § 4.1.6. Critically, the claim form makes clear that class members are not required to quantify or document any economic loss in order to submit a claim for Other Losses. *Id.* at Ex. D. After valid Reimbursement Claims and other settlement expenses are paid, the remaining funds will be distributed pro rata to Other Loss claimants. *Id.* at § 4.1.7.

### C. Scope of Release

Members of the settlement classes who did not opt out will release "all claims and causes of action that were or could have been raised in this action" against Minka Lighting. S.A., ECF No. 50-2 at § 1.26; *see also id.* at § 8.1. This is a standard release, covering only those claims that arise from the data security incident.

### D. Attorney Fees and Service Award

The Settlement also provides that Class Counsel may request up to one-third of the Settlement Fund, plus litigation costs, as well as a modest $2,500 service award for Mr. Medoff. S.A., ECF No. 50-2 at § 9.1. Class Counsel separately filed a motion for attorney fees explaining why that request is reasonable. *See* Mot. for Attorney Fees, ECF No. 59. The settlement does ***not*** contain a so-called "clear sailing" provision, so "Minka Lighting [was] free to support, oppose, or take no position with respect to any such Fee Application." S.A., ECF No. 50-2 at § 9.1. In addition, the settlement is not contingent on the Court approving the requested fees or service award. *Id.* at § 9.3.

### E. Notice and Settlement Administration

The Settlement provides for a robust notice program consisting of: (1) direct mail notice to all class members with known mailing addresses or, where a mailing address is not available, by email to the last known personal email address; and (2) publication notice through a settlement website. The Notice and Claim Forms are clear and concise and informed Settlement Class Members of their rights and options under the Settlement, including detailed instructions on how to make a claim, object to the Settlement, or opt-out of the Settlement. *See* S.A., ECF No. 50-2 at at Ex. A (email notice), Ex. B. (long-form notice), Ex. C (Reimbursement Claim form), Ex. D (Other Loss Claim form). In addition to the direct notice, the Administrator also established a dedicated Settlement Website that the Administrator maintained and updated throughout the Claims Period, with the forms of Short Notice, Postcard, Long Notice, and Claim Form approved by the Court, as well as the Settlement Agreement. S.A., ECF No. 50-2 at § 6.2.5. The Settlement Administrator also made a toll-free help line staffed with a reasonable number of live operators available that provided Settlement Class Members with additional information about the settlement. S.A., ECF No. 50-2 at § 6.2.4.

## II. Summary of the Notice and Claims Process

The parties retained Analytics Consulting, LLC as the Settlement Administrator. *See* Grayson Decl. at ¶ 5. Analytics implemented the notice plan as contemplated by the settlement agreement and previously approved by the Court. Analytics sent direct mail notice to every class member whose address was available from Defendant's records. *Id.* at ¶¶ 7–10. It also issued publication notice in the form of the settlement website. *Id.* at ¶ 11. Analytics established a toll-free phone number and dedicated email for responding to inquiries from class members. *Id.* at ¶ 12.

During the claims process, not a single class member opted-out or objected to the settlement. *Id.* at ¶¶ 14–15. There were 251 valid Other Loss Claims. *Id.* at ¶ 17. This yields a 3.8% claims-rate, which is fairly typical in cases of this type. *See, e.g.*, *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 599 (N.D. Cal. 2020) (approving data breach settlement and noting that "the 0.83% claims rate . . . is on par with other consumer cases, and does not

1 otherwise weigh against approval"); *In re Anthem Data Breach Litig.*, 327 F.R.D. 299, 329 (N.D.
2 Cal. 2018) (approving data breach settlement with 1.8% claims rate). If the Court approves the
3 settlement and grants Plaintiff's pending motion for attorney fees, litigation costs, and a service
4 award, then the estimated payment for each claimant is $1,758.72. *See* Grayson Decl. at ¶ 19.
5 That is plainly an incredible result for class members.

6                                              **ARGUMENT**

7 **I.     The Settlement satisfies all requirements for final approval.**

8         The Court must grant final approval of any class action settlement before it can be
9 effectuated. *See Hung V. Vu, D.D.S. v. I Care Credit, LLC*, 2022 U.S. Dist. LEXIS 201639, at
10 *14 (C.D. Cal. Nov. 4, 2022). Courts may approve a class action settlement if it is "fair,
11 reasonable, and adequate." FED. R. CIV. P. 23(e)(2). Relevant considerations include whether: (A)
12 "the class representatives and class counsel have adequately represented the class"; (B) "the
13 proposal was negotiated at arm's length"; (C) "the relief provided for the class is adequate"; and
14 (D) "the proposal treats class members equitably relative to one another." *Id.*[1] That standard is
15 more than satisfied here.

16            **A.     The Class was adequately represented.**

17        When considering adequacy of representation under Rule 23(e)(2)(A), courts ask two
18 questions: "(a) do the named plaintiffs and their counsel have any conflicts of interest with other
19 class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously
20 on behalf of the class?" *In re MyFord Touch Consumer Litig.*, 2019 U.S. Dist. LEXIS 53356, at
21 *24 (N.D. Cal. Mar. 28, 2019) (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th
22 Cir. 2000)). Here, neither class counsel nor the class representatives have any conflicts of interest.

---

[1] Rule 23(e)(2) substantially overlaps with the additional factors recognized in Ninth Circuit precedent, so Plaintiff accounts for the Ninth Circuit's factors as relevant. *See, e.g.*, *Loomis v. Slendertone Distribution*, 2021 U.S. Dist. LEXIS 44047, *9 (S.D. Cal. Mar. 8, 2021) ("Because of the overlap between the Rule 23(e)(2)'s factors and the Ninth Circuit's additional factors, the Court folds the Ninth Circuit's factors into its analysis of Rule 23(e)(2)."). The Ninth Circuit's additional factors are: "[1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (citation omitted).

1   Moreover, class counsel vigorously represented the interests of the class, in prevailing on

2   Defendant's motion to dismiss, and then in obtaining discovery to ensure they had sufficient

3   information to evaluate the merits of the case at mediation. *See* Joint Decl., ECF No. 50-1 at ¶¶

4   10–12; *Conti v. Am. Honda Motor Co.*, 2022 U.S. Dist. LEXIS 1561, at *24 (C.D. Cal. Jan. 4,

5   2022) (noting that adequacy may depend on whether class counsel "had an adequate information

6   base" to make an informed decision regarding settlement). This factor weighs in favor of

7   approval.

8          **B.**       **The settlement was negotiated at arm's length.**

9          Another important consideration is whether the settlement "was negotiated at arm's

10  length." FED. R. CIV. P. 23(e)(2)(B). Although this factor does not create a presumption of

11  fairness, *see Saucillo v. Peck*, 25 F.4th 1118, 1132 (9th Cir. 2022), "such negotiations can weigh

12  in favor of approval," *Community Res. For Indep. Living v. Mobility Works of Cal.*, 533 F. Supp.

13  3d 881, 888 (N.D. Cal. 2020). *See also Rodriguez v. W. Publishing Corp.*, 563 F.3d 948, 965 (9th

14  Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive,

15  negotiated resolution."). In this case, the parties' interactions were at all times adversarial. The

16  parties spent considerable time and effort negotiating the settlement, including through private

17  mediation with Bennett G. Picker, an experienced mediator. *See* Joint Decl., ECF No. 50-1 at ¶¶

18  9–12 This strongly indicates that there was no collusion, and indeed there was none. *See Conti*,

19  2022 U.S. Dist. LEXIS 1561 at *26 (noting that that presence of a mediator suggests negotiations

20  "were conducted in a manner that would protect and further class interests").

21         When analyzing Rule 23(e)(2)(B), courts also ask whether any of the *Bluetooth* factors are

22  present, which could suggest the presence of collusion. *See Cottle v. Plaid Inc.*, 340 F.R.D. 356,

23  376 (N.D. Cal. 2021) (citing *Briseno v. Henderson*, 998 F.3d 1014 (9th Cir. 2021)); *see also In re*

24  *Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). "These

25  *Bluetooth* factors are (1) when counsel receive a disproportionate distribution of the settlement or

26  when the class receives no monetary distribution but class counsel are amply rewarded; (2) when

27  the payment of attorneys' fees is separate and apart from class funds; and (3) when the parties

28  arrange for benefits that are not awarded to revert to the defendants rather than being added to the

class fund." *Cottle*, 340 F.R.D. at 376 (quotation marks omitted) (quoting *Briseno*, 998 F.3d at 1023). None of the *Bluetooth* factors are present here. First, the size of the requested fee is by no means disproportionate, as "California courts routinely award attorneys' fees of one-third of the common fund." *Hernandez v. Burrtec Waste & Recycling Servs., LLC*, 2023 U.S. Dist. LEXIS 147432, at *15 (C.D. Cal. Aug. 21, 2023) (citation omitted). Second, any award of attorney fees will be paid from the same fund as the class, rather than a separate payment, thereby aligning Class Counsel's interests precisely with those of their clients. S.A., ECF No. 50-2 at § 3.3.5. Third, this is a common fund settlement with no reversion. Therefore, all markers indicate that this Settlement is non-collusive and was negotiated at arm's length, as indeed it was.

### C. The settlement provides adequate relief.

Rule 23(e)(2)(C) requires courts to consider whether "the relief provided for the class is adequate, taking into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." FED. R. CIV. P. 23(e)(2)(C). In this case, the proposed settlement would establish a $700,000 non-reversionary common fund for the benefit of 6,577 class members. The settlement is thus worth $106.43 per class member, which compares favorably to many recent data breach cases that were settled on a common fund basis in this district and across the country:

| **Common Fund Data Breach Settlements from C.D. Cal.** | | | |
|---|---|---|---|
| **Case Citation** | **Number of Class Members** | **Total Value of Non-Reversionary Common Fund**[2] | **Value Per Class Member** |
| *Koenig v. Lime Crime, Inc.*, 2018 U.S. Dist. LEXIS 245359, at *11 (C.D. Cal. Apr. 2, 2018) | 107,726 | $110k | $1.02 |

---

[2] This chart focuses on the non-reversionary monetary relief of the described settlements rather than, for example, injunctive relief, to which it is often difficult to assign a precise value.

- 7 -

| | | | |
|---|---|---|---|
| *Gaston v. Fabfitfun, Inc.*, 2021 U.S. Dist. LEXIS 147383, *18–20 & n.1 (C.D. Cal. Apr. 2, 2021) | 441k | $625k | $1.42 |
| *Carter v. Vivendi Ticketing United States LLC*, 2023 U.S. Dist. LEXIS 210744, at *2, *13 (C.D. Cal. Oct. 30, 2023) | 437,310 | $3MM | $6.86 |
| *Gupta v. Aeries Software, Inc.*, 2023 U.S. Dist. LEXIS 36141, at *5 (C.D. Cal. Mar. 3, 2023) | 98,199 | $1.75MM | $17.82 |
| **Common Fund Data Breach Settlements from Other Jurisdictions** | | | |
| **Case Citation** | **Number of Class Members** | **Total Value of Non-Reversionary Common Fund** | **Value Per Class Member** |
| *Huffman v. Commscope, Inc.*, No. 5:23-cv-132, ECF No. 27 (W.D.N.C.) | 8,613 | $440k | $51.09 |
| *Blackwell v. Kraemer N. Am., LLC*, No. 23-cv-1851, 2024 U.S. Dist. LEXIS 92936 (D. Minn. May 7, 2024) | 8,692 | $340k | $39.12 |
| *Thomas v. Cleveland Brothers Holding Co.*, No. 1:23-cv-501, ECF No. 30 (M.D. Pa.) | 8,600 | $450k | $53.32 |

This settlement—which is a common fund with no reversion—also compares favorably to claims-made or reversionary data breach settlements from this district. *Cf. Hashemi v. Bosley, Inc.*, 2022 U.S. Dist. LEXIS 119454, at *6, *17 (C.D. Cal. Feb. 22, 2022) (analyzing claims-made

settlement that provided up to $500,000 to class of 100k and noting that "Plaintiffs' $15 to $275 per Class Member value estimates greatly exceed the settlement value per class member in comparable data breach cases"); *Bowdle v. King's Seafood Co., LLC* 2022 U.S. Dist. LEXIS 240383, at *6, *17 (C.D. Cal. Oct. 19, 2022) (analyzing claims-made settlement providing up to $350,000 for class of 2,875 and noting that $121 per class member "greatly exceeds the settlement value per class member often seen in larger data breach cases"). The estimated amount that each valid and timely Claimant will actually receive under the settlement—$1,758.72—is outstanding and will make a real difference in most claimants' lives.

The factors enumerated in Rule 23(e)(2) further demonstrate that this settlement provides excellent relief for the class.

*Cost, Risk, and Delay of Trial and Appeal.* While Plaintiff is confident of the ultimate outcome of the case, he would face several challenges going forward. On the merits, California law is unsettled as to many issues prevalent in data breach litigation. Take the Court's order in this case on Defendant's motion to dismiss. Some California courts have held (correctly, in Plaintiff's view) that the damages element of a negligence claim is satisfied by a loss of privacy caused by the exposure of sensitive information in a data breach. *See, e.g.*, *Mehta v. Robinhood Fin. LLC*, 2021 U.S. Dist. LEXIS 253782, at *19 (N.D. Cal. May 6, 2021) ("Plaintiffs adequately allege damages, including . . . privacy injuries associated with having their sensitive personal and financial information disclosed."). Yet the Court here was unpersuaded by those decisions. *See* MTD Order, ECF No. 37 at PageID 257 n.10. Similarly, while the Court upheld Plaintiff's implied contract claim on the grounds that subsequent state court decisions abrogated the discussion of nominal damages in *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000), other district courts in data privacy cases have suggested that they remain bound by *Aguilera*. *Compare* MTD Order, ECF No. 37 at 260, *with Cabrera v. Google LLC*, 2023 U.S. Dist. LEXIS 142643, at *17 n.5 (N.D. Cal. Aug. 15, 2023). All this goes to show that the law of data privacy is rapidly evolving and difficult to predict. And even if Plaintiff prevailed on the merits, there likely would have been an appeal.

Moreover, the Court previously suggested "that at a later point there may be questions

1  regarding the sufficiency of Plaintiff's damages given that Defendant offered [one year of]
2  identity monitoring services as a result of the breach." MTD Order, ECF No. 37 at 256. In Judge
3  Wilson's view, it was possible that this offer would "take the punch out of the cost of
4  monitoring," which was one of the damages theories Plaintiff would have presented at the class
5  certification stage. Hr. Tr., ECF No. 35 at 226. Plaintiff respectfully disagrees with that view
6  because, as counsel stated at the hearing, "criminals often wait many years to commit identity
7  theft." *Id.* at 225. But the Court ultimately reserved the question, meaning there was significant
8  risk for the class that the Court would limit or reject entirely Plaintiff's model for calculating
9  classwide damages.

10  In addition, class certification and summary judgment motions would take, at a minimum,
11  a year to brief and obtain rulings from the Court. And while summary judgment might have been
12  able to narrow some of the legal questions, it is highly likely that a jury would have to decide
13  whether Defendant exercised proper care in protecting its data. This means that a jury trial could
14  be held no earlier than 2025. Moreover, to the best of Class Counsel's knowledge, "no data
15  breach case has gone to trial." Max Meglio, Note, *Embracing Insecurity: Harm Reduction*
16  *Through a No-Fault Approach to Consumer Data Breach Litigation*, 61 B.C. L. REV. 1223, 1235
17  (2020). As such, a trial on the merits would be uncharted territory, making the risks difficult to
18  fully evaluate by any party. This is on top of the complexities and risks of class trials that, while
19  manageable, are more significant than a single-plaintiff litigation.

20  *Distribution Method.* The claims process was simple, straightforward, and equitable. The
21  Claim Form was simple and easy to understand, and it may have been submitted in paper or
22  online. *See* S.A., ECF No. 50-2 at, at Ex. C–D. Class members submitting claims for Other
23  Losses did not need to provide any documentation of how they were affected by the data security
24  incident, as the claim form made clear. S.A., ECF No. 50-2 at § 4.1.6 & Ex. D. There were no
25  disputes over the validity of any claim. S.A., ECF No. 50-2 at § 4.1.3. And critically, no matter
26  how many claims were made, every dollar of the $700,000 will be paid out to class members who
27  make a claim; the specific amount per class member simply depends on the number of claims that
28  were made.

*Attorney Fees.* Plaintiff's counsel have requested attorney fees in the amount of one-third of the common fund which, as set forth in Plaintiff's separately filed motion for attorney fees, is reasonable in these circumstances. *See* ECF No. 59. Moreover, the Settlement is not contingent upon an award of fees. *See* S.A., ECF No. 50-2 at § 9.3; *Stanton v. Boeing Co.*, 327 F.3d 938, 972 (9th Cir. 2003) (explaining that if a fee is awarded "using common fund fee principles," then "the agreement as a whole does not stand or fall on the amount of fees"); *In re Easysaver Rewards Litig.*, 906 F.3d 747, 762 (9th Cir. 2018) (vacating fee award but otherwise approving settlement because fee was awarded under common fund principles and the "settlement agreement expressly does not depend on approval of the fee award"). As explained in Plaintiff's separate fee petition, an upward departure from the Ninth Circuit's 25% benchmark is well warranted when claimants *will receive over $1,700* in a case in which the losses are relatively modest and difficult to measure.

*Rule 23(e)(3) Agreement.* The Parties did not make any side agreements subject to disclosure under FED. R. CIV. P. 23(e)(3).

### D. The settlement treats class members equitably.

When considering whether the settlement "treats class members equitably relative to each other," FED. R. CIV. P. 23(e)(2)(D), courts seek "to ensure that similarly situated class members are treated similarly and that dissimilarly situated class members are not arbitrarily treated as if they were similarly situated," *Mandalevy v. Bofi Holding, Inc.*, 2022 U.S. Dist. LEXIS 89205, *28 (S.D. Cal. Mar. 17, 2022) (quoting 4 William Rubenstein, *Newberg on Class Actions* § 13:56 (5th ed. 2020)). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." FED. R. CIV. P. 23, advisory committee note to 2018 amendment. Here, all class members had an equal right to file a claim against the Settlement Fund. To account for the possibility that some class members may have suffered actual identity theft and therefore incurred greater damages, the settlement allowed class members to submit claims for reimbursement of out-of-pocket losses before distributing the rest of the fund pro rata among the remaining valid

claimants.[3] Therefore, the claims process in this case equitably accounted for potential differences between how individuals were affected by the data security incident.

In addition, Mr. Medoff has requested a $2,500 service award. *See* Mot. for Attorney Fees, ECF No. 59; S.A., ECF No. 50-2 at § 9.1. "Class representative service awards are well-established as legitimate in the Ninth Circuit." *Ramirez v. Rite Aid Corp.*, 2022 U.S. Dist. LEXIS 109069, *21 (C.D. Cal. May 3, 2022); *see also In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 785 (9th Cir. 2022) (reaffirming "that 'reasonable incentive awards' to class representatives 'are permitted'"). As set forth in Plaintiff's pending motion for attorney fees, litigation costs, and a service award (ECF No. 59), $2,500 is a reasonable service award and therefore is equitable to the class. *See, e.g.*, *Jackson v. Fastenal Co.*, 2023 U.S. Dist. LEXIS 87675, at *23 (E.D. Cal. May 18, 2023) ("In the Ninth Circuit, courts have found that $5,000 is a presumptively reasonable service award.").

## CONCLUSION

The Court should issue an order granting final approval to the proposed settlement and issuing a final judgment in this case.

Dated: May 30, 2024         Respectfully submitted,

By: */s/ Jared W. Connors*

Matthew R. Wilson (SBN 290473)
Michael J. Boyle, Jr. (SBN 258560)
Jared W. Connors (*pro hac vice*)
MEYER WILSON CO., LPA
305 W. Nationwide Blvd
Columbus, OH 43215
Telephone: (614) 224-6000
Facsimile:   (614) 224-6066
mwilson@meyerwilson.com
mboyle@meyerwilson.com
jconnors@meyerwilson.com

---

[3] No valid reimbursement claims were filed. *See* Grayson Decl. at ¶ 17.

**CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.2**

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 12 pages (exclusive of the cover page, tables of contents and authorities, signature block, and certificates of compliance and service), which complies with the page limit set forth in this Court's standing order.

*/s/ Jared W. Connors*

Jared W. Connors

**CERTIFICATE OF SERVICE**

I hereby certify that on May 30, 2024 the foregoing was filed through the Court's CM/ECF system, which will electronically serve all parties' counsel of record.

*/s/ Jared W. Connors*

Jared W. Connors
